1

2                                          JS - 6

3  **cc: LASC with Order,**
        No. BC 500026
4  **remand letter and docket**

5

6

7

8          **UNITED STATES DISTRICT COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA**

10

11  Emmanuel Onelum,              )  CV 13-2198 RSWL (FFMx)
                                  )
12           Plaintiff,           )
                                  )  **ORDER Re: Plaintiff's**
13      v.                        )  **Motion to Remand Removed**
                                  )  **Action [9]**
14  Best Buy Stores L.P.,         )
    erroneously sued as Best      )
15  Buy Co., Inc.; Dro            )
    Nersissian, erroneously       )
16  sued as Dro Nasissian, and    )
    Does 1 through 50,            )
17                                )
             Defendants.          )
18  _____  )

19      Currently before the Court is Plaintiff Emmanuel

20  Onelum's ("Plaintiff") Motion to Remand Removed Action

21  [9].  The Court having reviewed all papers submitted

22  pertaining to this Motion and having considered all

23  arguments presented to the Court, **NOW FINDS AND RULES**

24  **AS FOLLOWS:**

25      The Court hereby **GRANTS** Plaintiff's Motion. This

26  action is remanded to the Los Angeles County Superior

27  Court, Case No. BC500026.

28

                            1

# I. <u>BACKGROUND</u>

Plaintiff filed this Action in Los Angeles County Superior Court against Best Buy Stores L.P., erroneously sued as Best Buy Co., Inc. ("Best Buy");[1] Dro Nersissian, erroneously sued as Dro Nasissian (hereinafter referred to as "Nersissian"); and Does 1 through 50 (collectively, "Defendants"), alleging claims for (1) employment discrimination based on race and national origin under California Government Code § 12940; (2) retaliation in violation of § 12940; (3) failure to prevent discrimination and harassment in the workplace in violation of § 12940; (4) intentional infliction of emotional distress ("IIED"); (5) wrongful termination in violation of public policy; and (6) harassment in violation of § 12940.  Plaintiff alleges claims of IIED and harassment against Defendant Nersissian.

This Action was removed from state court based on diversity jurisdiction under 28 U.S.C. § 1332 and 1441 [1].

Plaintiff is a black male of Nigerian descent residing in Los Angeles County.  Compl. ¶¶ 4, 18.  Best Buy is a business organized under the laws of Virginia, with its principal place of business in Minnesota, doing business in Los Angeles County.  <u>Id.</u> ¶ 5; Notice

---

[1] Defendants clarify that Plaintiff's Complaint should have named Best Buy Stores, L.P. instead of "Best Buy Co., Inc." and Dro Nersissian, not "Dro Nasissian".

2

of Removal ¶ 10.

　　Plaintiff was employed by Best Buy as a supervisor in the Canoga Park, California Best Buy store, from October 2010 to June 2012, when he was terminated. Compl. ¶¶ 10-11.  Defendant Nersissian was Plaintiff's direct supervisor.  Id. ¶ 11.

　　Plaintiff's Complaint alleges that throughout his employment with Best Buy, he was subjected to harassment, bullying, intimidation, and discrimination by Nersissian.  Id. ¶ 12.  For example, on August 17, 2011, Plaintiff "observed [Nersissian] give his cash register override code to another employee in violation of company policy".  Id.  Plaintiff reported this to management.  Id.  Subsequently, the Complaint alleges, Plaintiff was "given a final write up and . . . placed on a 30 day action plan supposedly for poor sales numbers."  Id.  Later in January 2012, Plaintiff was "written up for attempting to handle an incident with a customer that was abusive towards him and his staff." Id. ¶ 13.  After Plaintiff complained to human resources about Nersissian's actions, Nersissian then started to threaten him with "forced transfers or termination", and Best Buy began to cut his hours.  Id. During this period, Nersissian repeatedly made disparaging comments about Plaintiff's accent.  Id. ¶ 19.

///

## II.  <u>LEGAL STANDARD</u>

Removal to federal court is governed by 28 U.S.C. § 1441, which in relevant part states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants . . . ." 28 U.S.C. § 1441(a).  All named defendants must join in a removal petition.  <u>Hewitt v. City of Stanton</u>, 798 F.2d 1230 (9th Cir. 1986).

District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.

The Court may remand a case to state court for lack of subject matter jurisdiction or defects in removal procedure.  28 U.S.C. § 1447(c).  A defendant has the burden of proving that removal was proper.  <u>See Ethridge v. Harbor House Rest.</u>, 861 F.2d 1389, 1393 (9th Cir. 1988).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded.  28 U.S.C. § 1447(c).  The Ninth Circuit strictly construes the removal statute against removal jurisdiction, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. <u>See Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941) (stating that removal statutes should be

4

construed narrowly in favor of remand to protect
jurisdiction of state courts).

### III. <u>ANALYSIS</u>

Defendants claim that this Court has subject matter
jurisdiction on the basis of diversity, 28 U.S.C. §
1332(a).  Defendants do not dispute that Defendant
Nersissian is a citizen of California, and Plaintiff is
a citizen of California and are thus not diverse.
However, Defendants claim that Nersissian's citizenship
should be disregarded because he was fraudulently
joined.  Notice of Removal ¶ 19.

"Fraudulent joinder is a term of art.  If the
plaintiff fails to state a cause of action against a
resident defendant, and the failure is obvious
according to the settled rules of the state, the
joinder of the resident defendant is fraudulent."
<u>McCabe v. Gen. Foods Corp.</u>, 811 F.2d 1336, 1339 (9th
Cir. 1987).  The fraudulent joinder doctrine requires
courts to disregard the citizenship of defendants when
no viable cause of action has been stated against them,
or when evidence presented by the removing party shows
that there is no factual basis for the claims alleged
against the defendants.  <u>See</u> <u>Morris v. Princess
Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001).
"There is a presumption against finding fraudulent
joinder, and defendants who assert that plaintiff has
fraudulently joined a party carry a heavy burden of
persuasion."  <u>Plute v. Roadway Package Sys.</u>, Inc., 141

F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).  "[T]he defendant must demonstrate that *there is no possibility* that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) (emphasis added). "[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009) (quoting Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)).

In determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992).  Furthermore, "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand . . ., and a lack of clear precedent does not render the joinder fraudulent." Archuleta v. Am. Airlines, Inc., No. CV 00-1286 MMM (SHX), 2000 WL 656808, *4 (C.D. Cal. May 12, 2000) (citing Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992), and Lieberman v. Meshkin,

1   <u>Mazandarani</u>, 1996 WL 732506, *3 (N.D. Cal. 1996)).

2       Here, Defendants argue that the claims asserted

3   against Nersissian, IIED and harassment, fail as a

4   matter of law.  Specifically, Defendants argue that

5   Plaintiff's IIED claim fails because of the "managerial

6   privilege" rule and alternatively because it is barred

7   by the California Worker's Compensation Preemption Act,

8   California Labor Code § 3600 *et. seq.*

9       The Court finds that Defendants have failed to

10  demonstrate that under settled California law "there is

11  no possibility" that Plaintiff will be able to

12  establish a cause of action against Defendant

13  Nersissian.

14      In particular, Plaintiff's IIED claim against

15  Nersissian remains viable because state case law does

16  not support Defendants' contention that Nersissian

17  cannot be sued as a matter of law because he is

18  allegedly protected by the so-called "managerial

19  privilege".  Defendants cite several cases that they

20  allege support the contention that the conduct of

21  managerial employees is absolutely privileged under the

22  doctrine of managerial immunity if the disputed conduct

23  was within the course and scope of their employment.

24  <u>See</u>, <u>e.g.</u>, <u>Marin v. Jacuzzi</u>, 224 Cal. App. 2d 549

25  (1964); <u>Aalgard v. Merchants Nat. Bank, Inc.</u>, 224 Cal.

26  App. 3d 674, 684-86 (1990); <u>McCabe v. Gen. Foods Corp.</u>,

27  811 F.2d 1336 (9th Cir. 1987).  However, each of these

28  cases involves ***intentional interference with a contract***

1  ***induced by a third party***, which is not at issue here.

2      As thoroughly discussed in <u>Calero v. Unisys</u>

3  <u>Corporation</u>, 271 F. Supp. 2d 1172, 1177 (N.D. Cal.

4  2003),

> The manager's privilege arises from the notion
> that while a disinterested third party may be
> liable for interference with a contractual or
> economic relationship, a party having an
> interest in that relationship must be judged
> differently. <u>See</u>, <u>e.g.</u>, <u>Kozlowsky v.</u>
> <u>Westminster Nat'l Bank</u>, 6 Cal. App. 3d 593, 86
> Cal.Rptr. 52 (1970). Where a managerial
> employee is motivated by a desire to benefit
> his principal, his conduct in inducing a breach
> of contract should be privileged. <u>Los Angeles</u>
> <u>Airways, Inc. v. Davis</u>, 687 F.2d 321, 328 (9th
> Cir. 1982). The privilege is designed to
> further certain societal interests by fostering
> uninhibited advice by agents to their
> principals. <u>Id.</u> As such, "the manager's
> privilege is merely an application of the
> general rule that the tort of intentional
> interference with economic relations applies
> only to disinterested parties." <u>Graw v. Los</u>
> <u>Angeles County Metro. Transp. Auth.</u>, 52 F.
> Supp. 2d 1152, 1154 (C.D. Cal. 1999).

27      Defendants fail to cite a single case that applies

28  this managerial privilege rule to the tort of

8

intentional infliction of emotional distress.  It is questionable whether Defendants' "managerial privilege" theory could be asserted with respect to an intentional infliction of emotional distress claim.  <u>See</u> <u>Winzler v. Victor O. Schinnerer & Co.</u>, No. C-92-1679 DLJ, 1992 U.S. Dist. LEXIS 12790, *8-9 (N.D. Cal. July 14, 1992) (rejecting defendants' argument that managerial privilege applies to intentional infliction of emotional distress claim); <u>Losik v. Current, Inc.</u>, 92-20352 SW, 1992 U.S. Dist. LEXIS 20550, *6 (N.D. Cal. Oct. 30, 1992) (holding that allegations of intentional infliction of emotional distress are outside scope of managerial privilege).  Here, Defendants have failed to show that a state court will find that the manager's privilege applies in this Action.

Defendants rely heavily on <u>McCabe</u> and <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55 (1996), but appear to misread the cases.  In <u>McCabe</u>, the plaintiff's cause of action for ***wrongful discharge*** against his supervisors was found to be deficient because the supervisor's conduct was privileged.  811 F.2d at 1339.  The Court dismissed plaintiff's claim for intentional infliction of emotional distress because the plaintiff had not shown the requisite "outrageousness" to qualify for that tort claim, not because of managerial privilege.  <u>Id.</u> at 1340.  <u>Janken</u> is inapposite here because it held that plaintiffs' allegation that defendants laid them off or placed caps

on their salaries was just normal "managerial" conduct, not outrageous conduct sufficient to state a claim for IIED.  46 Cal. App. 4th at 80.

Besides the question of whether the managerial privilege is even applicable to IIED, "it is far from clear under California law whether the managerial privilege is an affirmative defense or part of the plaintiff's cause of action."  <u>Calero</u>, 271 F. Supp. 2d at 1180 (comparing <u>Aalgaard v. Merchs. Nat'l Bank, Inc.</u>, 224 Cal. App. 3d 674, 683 (1990)("privilege, is an affirmative defense, not an element of plaintiff's cause of action. . . .") <u>with</u> California Jury Instruction CA BAJI 12.70)("The essential elements of this claim are: 1. The defendant engaged in outrageous, [unprivileged] conduct:. . .")).  "It is also uncertain whether the privilege, if any, is absolute or conditional.  What is clear from a review of cases such as <u>Aalgard</u> is that the question of the privilege as well as the claim itself is bound up in the conduct of the defendant and is thoroughly fact intensive."  <u>Id.</u>

Further, it is possible that Plaintiff may be able to state a claim of IIED against Nersissian. California permits recovery for conduct "so extreme and outrageous as to go beyond all possible bound of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  <u>Rulon–Miller v. Int'l Bus. Mach. Corp.</u>, 162 Cal. App. 3d 241, 254 (1984).  Terminating an employee is not alone

sufficient to satisfy the standard for extreme and
outrageous conduct.  <u>Pitman v. City of Oakland</u>, 197
Cal. App. 3d 1037, 1047 (1988).  Where behavior goes
beyond the act of termination, however, it is for the
court to determine whether on the evidence severe
emotional distress can be found.  <u>Rulon-Miller</u>, 162
Cal. App. 3d at 254; <u>see also</u> <u>Calero</u>, 271 F. Supp. 2d
at 1177.

Plaintiff alleges that Nersissian threatened to
terminate or transfer him on a monthly basis, that
Nersissian repeatedly disparaged Plaintiff's accent,
and that Nersissian's actions were "extreme and
outrageous".  Plaintiff allegedly suffered emotional
distress involving anxiety attacks, lack of sleep and
fatigue.  Compl. ¶ 47.  Further, Nersissian was a
person standing in a position of authority over
Plaintiff.  A state court could possibly find that
Plaintiff has established a cause of action for
intentional infliction of emotional distress.  <u>See</u>,
<u>e.g.</u>, <u>Alcorn v. Anbro Eng'g, Inc.</u>, 2 Cal.3d 493, 499
(1970) (holding that plaintiff's allegation that his
supervisor called him racial epithets was sufficient to
state a claim for intentional infliction of emotional
distress).  "There is no authority for the proposition
that someone in [Nersissian's] position may not be
liable in tort for the intentional infliction of
emotional distress providing all of the elements of
that tort are satisfied.  Indeed, California case law

11

is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress." <u>Calero</u>, 271 F. Supp. 2d at 1178-79.

Finally, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provisions of the Workers' Compensation Act.  Cal. Lab. Code § 3602.  The Court finds that Defendants have not shown that Plaintiff's claim is preempted by the CWA.

Generally, claims for emotional distress caused by the employer's conduct causing distress such as "discharge, demotion, discipline or criticism" are preempted by the Workers' Compensation Act, even when the employer's acts causing the distress are intentional or outrageous. <u>Gantt v. Sentry Ins.</u>, 1 Cal.4th 1083, 1099 (1992), <u>rev'd on other grounds</u>, <u>Green v. Ralee Eng'g Co.</u>, 19 Cal.4th 66, 80, n. 6 (1998).  Such distress, whether intentional or negligent conduct on the part of the employer, is considered "part of the normal risk of employment" and hence subject to the exclusive remedies of the workers' compensation laws. <u>Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund</u>, 24 Cal.4th 800, 814-15 (2001).

The phrase "normal part of the employment relationship," however, does not encompass all conduct

12

that occurs on the job.  <u>Cole v. Fair Oaks Fire Prot.</u>
<u>Dist.</u>, 43 Cal.3d 148, 160 (1987).  Tort recovery
pursued via a separate civil action is permitted if the
conduct of the employer has a "questionable"
relationship to the employment or where the employer
steps out of his proper role.  <u>Id.</u> at 161; <u>see also</u>
<u>Shoemaker v. Myers</u>, 52 Cal.3d 1, 16 (1990) (holding
that the exclusive remedy provisions are not applicable
to risks not "reasonably encompassed within the
compensation bargain" under the Workers' Compensation
Act).

   In particular, the Supreme Court of California held
in <u>Livitsanos v. Superior Court</u>, 2 Cal. 4th 744, 754
(1992), that "so long as the basic conditions of
compensation are otherwise satisfied (Lab. Code, §
3600), and the employer's conduct neither contravenes
fundamental public policy . . . nor exceeds the risks
inherent in the employment relationship, an employee's
emotional distress injuries are subsumed under the
exclusive remedy provisions of workers' compensation."
However, where the plaintiff has contended that the
employer's conduct is outside the normal risks of the
employment relation, claims for emotional distress are
not preempted by CWA.  <u>Id.</u>  In <u>Livitsanos</u>, the Court
held that the plaintiff's intentional infliction of
emotional distress and defamation claims, premised on
her contention that defendants falsely claimed that she
embezzled money, could be "outside the scope and normal

risks of employment" such that CWA *does not* preempt her claims.  Id.; see also Kovatch v. Cal. Cas. Mgmt. Co., Inc., 65 Cal. App. 4th 1256, 1277 (holding that an emotional distress claim arising from unlawful harassment was not preempted), rev'd on other grounds, Aguilar v. Atlantic Richfield Co., 25 Cal.4th 826, 107 (2001); Fretland v. Cnty. of Humboldt, 69 Cal. App. 4th 1478, 1492 (1999) (holding that an emotional distress claim arising from unlawful discrimination was not preempted).

Defendants rely heavily upon Cole, 43 Cal.3d 148 (1987), but it "does not prohibit all emotional distress causes of action against an employer . . . only those based on conduct that is a normal risk of the employment relationship."  Fretland, 69 Cal. App. 4th at 1492.

"There is no bright line test in determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain. Nevertheless, district courts must resolve ambiguities in the controlling state law in favor of the non-removing party when evaluating fraudulent joinder." Calero, 271 F. Supp. 2d at 1181.

Here, Plaintiff's intentional infliction of emotional distress claim is based on the allegation that Defendant Nersissian repeatedly threatened to terminate him, while also disparaging his accent. Defendants have failed to show that Plaintiff's claim

14

is impossible as a matter of California law. Specifically, Defendants have not shown whether Defendant Nersissian's acts are within the "normal risks" of the employment relationship or the fundamental public policy of California.  To the contrary, the Ninth Circuit has held that racial discrimination is not a "normal part" of the workplace. <u>Miller v. Fairchild Indus., Inc.</u>, 885 F.2d 498, 510 (9th Cir. 1989).

For the reasons discussed above, the Court finds that Plaintiff's claim of intentional infliction of emotional distress raises a possible cause of action.

Accordingly, the Court need not reach Defendants' additional argument that Plaintiff cannot possibly state a claim against Nersissian for harassment.

### III. CONCLUSION

Based on the foregoing, this Court **GRANTS** Plaintiff's Motion to Remand. The Clerk shall close this action and remand it to the Los Angeles County Superior Court, Case No. BC500026.

**IT IS SO ORDERED.**

DATED: May 30, 2013

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge